# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                    Criminal No. 14-206(2) (JNE/JJK)

                        Plaintiff,

v.                                             **REPORT AND RECOMMENDATION**

LATESE CAPREE HUDSON,

                        Defendant.


Jeffrey S. Paulsen, Esq., Assistant United States Attorney, for the Plaintiff, United States of America;

Kirk M. Anderson, Esq., for the Defendant Latese Capree Hudson.


This action came on for hearing before the Court, Magistrate Judge Jeffrey J. Keyes, on July 28, 2014, at the U.S. Courthouse, 316 North Robert St., St. Paul, MN 55101.  An exhibit was received with regard to suppression of DNA evidence.

Based on the file and documents contained therein, along with the exhibit presented at the hearing, and the memorandums from counsel, the Magistrate Judge makes the following:

## Findings

A warrant authorizing the seizure of a DNA sample from the body of Latese C. Hudson (Hrg. Ex. 1) was issued on January 25, 2014, by Hennepin County District Court Judge Joseph R. Klein.  The search warrant identified the

object of the warrant as a DNA sample via buccal swab, or alternatively, a blood

draw, from Latese C. Hudson, Jr., 08/29/88.  The warrant was issued on the basis

of information contained in the Affidavit of Hennepin County Sheriff's Deputy Cory

McLouden, wherein the circumstances of an investigation into heroin sales and

distribution, and the Defendant's arrest, were described, and it was stated that the

known DNA sample was requested to allow comparison to evidence recovered

throughout the course of the investigation, particularly firearms that were

recovered in the execution of a previous search warrant in this matter.  The DNA

warrant was executed by Deputy McLouden on January 25, 2014.  (Hrg. Ex. 1).

Based on the foregoing Findings, the Magistrate Judge makes the

following:

**Conclusions**

Evidence seized pursuant to a warrant to seize a DNA sample from

the body of Latese C. Hudson (Hrg. Ex. 1), was not unlawfully obtained in violation

of the Fourth Amendment protection against unlawful search and seizure.  The

warrant was issued on January 25, 2014, and was based on sufficient probable

cause as stated in the Affidavit of Hennepin County Sheriff's Deputy Cory

McLouden and as determined by Hennepin County District Court Judge Joseph R.

Klein.  The warrant affidavit properly and sufficiently identified the person and the

subject of the seizure and stated a nexus between the object of the warrant and

the alleged offense in this case by stating that the Defendant had been observed

to be directly involved in the sale and distribution of heroin.

Defendant Hudson argues that probable cause for issuance of the DNA warrant was lacking because no firearms or drugs were found in his possession at the time he was apprehended; there was no indication that he had been seen with firearms or had a history of possessing firearms; and the warrant affidavit includes no showing that a sample had been obtained from a recovered firearm for comparison to the sample to be taken from the defendant.[1]  Defendant

_____

[1]  In *United States v. Roberts*, Crim. File No. 10mj458(LIB) (D. Minn. Nov. 29, 2010), the Court denied a government motion to compel a defendant to provide a DNA sample on grounds that taking the sample was a speculative and unlawful intrusion into the defendant's privacy in the absence of a sample from the firearm with which to make a comparison.  *Id.* at 7 (citing *Schmerber v. California*, 384 U.S. 757, 768 (1966)).  In *Roberts*, the Court denied a government motion to take a DNA sample based largely on the reasoning in *United States v. Pakala*, 329 F. Supp. 2d 178, 182 (D. Mass. 2004), in which the court found that a defendant "should [not] be subject to even the minimal intrusion of a swab DNA test unless it is first determined that any substance found on the firearm(s) has yielded a sufficient DNA profile for comparison."  Nonetheless, in *Roberts* the court allowed the swab to be taken, but prohibited testing prior to a laboratory determination that the subject firearm contained sufficient material to allow a DNA comparison.  Thus, the court merely found that the request for a DNA sample was premature and could later be sought by warrant (presumably based on the actual existence of DNA on the weapon).  In *Pakala*, the swab was permitted, but testing was precluded pending obtaining a sample for comparison. *See also United States v. Robinson*, No. 11-325 (DWF/LIB), 2011 WL 7563020, at*3 (D. Minn. Dec. 2, 2011) (holding that a warrant for the defendant's DNA was issued in error where the firearm had not yet been DNA tested, but concluding the warrant was executed in good faith).

The Government suggests that the *Roberts* and *Robinson* rulings have no vitality in light of the U.S. Supreme Court decision in *Maryland v. King*, 133 S.Ct. 1958 (2013), holding that obtaining a DNA sample is a minor intrusion, akin to taking fingerprints, that can be part of a routine booking procedure, and requiring no warrant.  The Government also advises the Court that, in any event,

also contends that the good faith exception does not apply in this instance.

"Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Illinois* v. *Gates*, 462 U.S. 213, 236 (1983)).  When determining whether probable cause exists, a court does not independently evaluate each piece of information, but rather, considers all of the facts for their cumulative meaning.  *United States v. Allen*, 297 F.3d 790, 794 (8th Cir. 2002).  The task of a court issuing a search warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *see also United States v. Salter*, 358 F.3d 1080, 1084 (8th Cir. 2004).  "In determining whether probable cause exists, [courts] recognize that the police possess specialized law enforcement experience and thus may draw reasonable inferences of criminal activity from circumstances which the general public may find innocuous." *United States v. Mendoza*, 421 F.3d 663, 667 (8th Cir. 2005).  Courts should not review search warrants in a hyper-technical fashion.  *United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006).

---

Defendant Hudson's DNA was subsequently found on one of the seized handguns, after the DNA sample was taken from Hudson's body (Gov't Memo. 4, n.2), essentially satisfying the *Roberts* and *Robinson* conditions.

In reviewing the decision of the issuing court, this Court must ensure that the court "'had a substantial basis for . . . conclud[ing] that probable cause exists.'" *United States v. Oropesa*, 316 F.3d 762, 766 (8th Cir. 2003) (quoting *Gates*, 462 U.S. at 238-39).   Because reasonable minds may differ on whether a particular search-warrant affidavit establishes probable cause, the issuing court's determination is accorded great deference.  *United States v. Wajda*, 810 F.2d 754, 760 (8th Cir. 1987) (citing *United States v. Leon*, 468 U.S. 897, 914 (1984)).

The DNA seizure warrant at issue here contains ample evidence to establish probable cause for issuance of the DNA seizure warrant.  The application recites a confidential reliable informant's ("CRI") description of a heroin distribution system operated by an identified person who used two runners to distribute drugs.  As stated in the application, the CRI identified a specific apartment address frequently used by co-Defendant Darnell King, and the CRI also identified specific vehicles used by King and the runners to facilitate drug transactions.  Pursuant to police surveillance, individuals matching the physical descriptions of the runners, as provided by the CRI, were observed exiting the apartment residence and entering a Chevy Malibu identified as one used by the runners, and thereafter the runners were observed conducting drug transactions.  In addition, the CRI purchased heroin from the runners in a controlled drug buy.  The warrant application states that the runners were later identified as co-Defendants James Pernell Thomas and Latese C. Hudson, and that they were

5

observed leaving through the back door of the apartment immediately prior to execution of a warrant to search the residence.  The warrant application further states that the runners entered a Ford Explorer after leaving the residence and fled when police attempted a vehicle stop.  Defendant Hudson was apprehended and taken into custody after the vehicle pursuit.  Meanwhile, the apartment search resulted in the seizure of two handguns, heroin, and cash.

In this instance the Court finds that the DNA seizure warrant was properly issued under a totality of circumstances whereby Defendant was apprehended and arrested for a drug offense and firearms had been inferentially connected to Defendant through observation of him arriving at and leaving from the location from which the firearms were recovered along with heroin.  There was probable cause to believe that Defendant's DNA would provide evidence of a crime.  *See  United States v. Willis*, No. 11-13 (DSD/JJK), 2011 WL 1100127 at *3 (D. Minn. March 14, 2011), and *United States v. Hastings*, No. 11-25 (RHK/FLN), 2011 WL 2412829, at *12 (D. Minn. May 23, 2011).  The warrant in this matter was lawfully issued and there is no requirement for suppression of DNA evidence seized pursuant to the warrant.

**Good Faith.**  In any event, this Court concludes that the good faith exception under *United States v. Leon*, 468 U.S. 897 (1984), applies with respect to execution of the DNA seizure warrant.  "[A]bsent allegations that the [issuing judge] was not neutral, 'suppression is appropriate only if the officers were

dishonest or reckless in preparing the affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Formaro*, 152 F.3d 768, 771 n.4 (8th Cir. 1998) (quoting *Leon* 468 U.S. at 926). There is no claim in this matter that the issuing judge was not neutral, and there has been no request for a hearing or review under *Franks v. Delaware*, 438 U.S. 154 (1978), to consider whether the affidavit contains deliberate or reckless misrepresentations, either by omission or misstatement.  *Formaro*, 152 F.3d. at 771.

Defendant argues that the good faith exception does not apply because DNA had not been recovered from a seized firearm; officers could not have known whether such DNA evidence would be obtained for comparison purposes; and the issuing judge likely would not have signed the warrant had he known that there was no comparison DNA.  Leaving aside the question of whether the existence or nonexistence of a gun sample would have even entered into the issuing judge's probable cause assessment, Defendant offers no evidence of officer misconduct that might be deterred in the future by declining to apply the good faith exception to the warrant requirement in this instance.  *See Herring v. United States*, 555 U.S. 135, 137 (2009) (stating that the question of suppression turns on the culpability of the police and the exclusion of evidence to deter wrongful police conduct).   The warrant here simply contains no indicia of an

7

absence of good faith in regard to either the application for or execution of the

warrant.

Based on the foregoing Findings and Conclusions, this Court makes

the following:

## RECOMMENDATION

The Court **hereby recommends** that Defendant Latese Capree

Hudson's Motion to Suppress Physical Evidence be (Doc. No. 42) **denied**.

Dated:   August 11, 2014

s/*Jeffrey J. Keyes*
Jeffrey J. Keyes
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and
Recommendation by filing with the Clerk of Court, and serving all parties by
**August 25, 2014**, a writing which specifically identifies those portions of this
Report to which objections are made and the basis of those objections.  Failure to
comply with this procedure may operate as a forfeiture of the objecting party's
right to seek review in the Court of Appeals.  A party may respond to the objecting
party's brief within **fourteen days** after service thereof.  All briefs filed under this
rule shall be limited to 3500 words.  A judge shall make a de novo determination
of those portions of the Report to which objection is made.  This Report and
Recommendation does not constitute an order or judgment of the District Court,
and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by
28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all
objections made to this Report and Recommendation, the party making the
objections shall timely order and file a complete transcript of the hearing within ten
days of receipt of the Report.